## IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **DEMOND DAVIS,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | **CASE NO. _____** |
| v. | **CLASS ACTION** |
| **BIO-LAB, INC.,** and **KIK CONSUMER PRODUCTS INC.,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Demond Davis ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through undersigned counsel, and brings this class action lawsuit against Defendants BioLab, Inc. ("BioLab" or "Defendant BioLab") and KIK Consumer Products Inc. ("KIK" or "Defendant KIK") (collectively, "Defendants") showing the court as follows:

### NATURE OF ACTION

Plaintiff, a resident of Conyers, Georgia, and others in his community like him, sustained a myriad of real property-related damages when, on September 29, 2024, a fire and smoke plume, which errupted at Defendants' Conyers, Georgia chemical plant and caused widespread "evacuat[ions] as toxic smoke billow[ed]

from [a] chemical-fueled inferno."[1]  As a result of Defendants' preventable acts and omissions, a fire, which emitted a gaseous cloud laced with caustic chemicals such as chlorine, hydrochloric acid hydrogen cyanide, hydrogen bromide and phosgene, covered Rockdale County and the surrounding communities, causing hazardous, toxic and unsafe conditions.  Plaintiff and the other Class members were forced to take action to evade the conditions created by Defendants and suffered losses, including the loss of use and enjoyment of their homes and businesses, remediation and clean-up costs, lost profits, and diminution of property value.  Plaintiff continues to suffer harm caused by Defendants' negligence, recklessness, and failure to prevent and/or contain the fire and toxic gaseous chemical cloud, and makes the allegations contained herein upon his personal knowledge as to Defendants' acts and/or omissions, upon information and belief, and upon Plaintiff's attorney's investigations:

## I.   GENERAL ALLEGATIONS

### A.   Parties

1.   Plaintiff Demond Davis is a life-long citizen of the State of Georgia and a resident of Rockdale County, Georgia since May 2013.

---

[1] https://www.foxnews.com/us/Bio-Lab-plant-fire-georgia-residents-evacuate-toxic-smoke-billows-chemical-fueled-inferno.

2.    On September 29, 2024, Plaintiff resided at 2208 Morning Dew, Conyers, GA, 30094, approximately 3.2 miles (as the crow flies) from the Conyers, Georgia chemical plant, located at 1700 Covington Hwy, Conyers, GA 30012 ("Conyers Plant").

3.    At all times relevant hereto, Defendant BioLab was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5.

4.    At all relevant times, BioLab owned and operated the Conyers Plant and engaged in and transacted the business of manufacturing and/or supplying chemicals in this District and throughout the United States.

5.    At all times relevant hereto, Defendant KIK was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5.

6.    At all times relevant hereto, Defendant KIK was one of North America's largest independent manufacturers of consumer products and transacted business in this District and throughout the United States.

7.    KIK acquired BioLab, and BioLab is a wholly owned subsidiary of KIK.  KIK has exercised complete control of BioLab's operations, to include the Conyers Plant, for at least a decade.

8.    KIK is a foreign corporation, with its principal offices and headquarters located in Canada.

**B.    Jurisdiction and Venue**

9.    The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this action is a class action in which the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and the Parties are citizens of different states.

10.    Defendants regularly operated their chemical business within this District, and through their regular business operations in this District, Defendants intentionally availed themselves of this Court's jurisdiction, conferring this Court with personal jurisdiction over Defendants.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in Rockdale County, Georgia in the Northern District of Georgia, Atlanta Division.

**C.    The BioLab Chemical Facility**

12.    BioLab manufactures and supplies products designed to chemically treat pool and spa water to include such products marketed as BioGaurd, SpaGuard,

Natural Chemistry, SeaKlear, AquaPill, Coral Seas, ProGuard, and Pro Series, and has operated its business in Rockdale County since 1973.[2]

13.     BioLab built and opened the Conyers Plant in 1973, and at all relevant times, operated same.   In 2014, BioLab was acquired by KIK, and it presently operates as the "swimming pool and spa water care division of KIK Consumer Products."[3]

14.     "Among other operations, the [Conyers Plant] received, blended, and packaged [trichloroisocyanuric acid] material into finished consumer products."[4]

15.     BioLab receives and stores chemicals including Trichloroisocyanuric Acid ("TCCA"), calcium hypochlorite, and dichloroisocyanuric acid and packages these chemicals for consumer product use.

16.     When handled properly TCCA may be used as a chlorinating agent to sanitize pool and spa water by adding the chemical compound to appropriate quantities and bodies of water where, by chemical reaction, it dissolves into

---

[2] https://www.biolabinc.com

[3] https://www.thepoolsupplywarehouse.com/collections/Bio-Lab-inc?srsltid=AfmBOoq9nf-WP5fAL-mdKtjxxn0AMWVtMxRW52di0yu0qDac3FlKPNh9.

[4] https://www.csb.gov/assets/1/6/Bio-Lab_investigation_report_2023-4-24.pdf.

hypochlorous acid ("HCIO"), a sanitizing agent that kills bacteria and other microorganisms.

17.    TCCA is meant to be slowly and carefully added to substantial bodies of water, so the chemical reaction may safely occur.  When small amounts of water are quickly applied to TCCA, a violent, combustible exothermic chemical reaction occurs instead.

18.    BioLab stored large quantities of TCCA and other combustible chemicals at the Conyers Plant, and knew or should have known that TCCA and the other chemicals it stored were at risk of producing hazardous combustion products, including toxic chlorine gas, when improperly stored and/or handled.

19.    Bio-Lab has a history of fires and toxic chemical releases at the Conyers Plant.

D.    BioLab's Hazardous History

20.    In 2004, the warehouse of the Conyers Plant caught fire, injuring 28 people.[5] The fire produced a toxic chlorine plume that affected residents within 50 miles of the Conyers Plant, and authorities closed Interstate 20.  The fire was caused by an explosion at the Conyers Plant fueled by 250,000 pounds of dry chlorine

---

[5] https://www.11alive.com/article/news/local/Bio-Lab-chemical-fire-conyers-georgia-2004-similar-incident/85-d71cc6d6-78cf-4283-9510-03c93b2ee71c.

pellets, which released massive amounts of chlorine and hydrochloric acid into the air.

21.    In 2016, a fire ignited in a storage shed at the Conyers Plant.[6] The fire was only noticed and reported because a nearby resident smelled smoke and chemicals and called the authorities. A Georgia Environmental Protection Agency division complaint reports that the chemical decomposition of TCCA fueled by reactions from chlorine pellets caused fumes to be released,[7] and residents within a 1-mile radius of the facility were evacuated.

22.    On September 14, 2020, a "thermal decomposition event" at the Conyers Plant caused noxious vapors to be released into the air and Interstate 20 to become temporarily closed.[8]

23.    Four days later, on September 18, 2020, another thermal decomposition event at the Conyers Plant ignited a fire.

24.    BioLab's reckless and negligent practices are not limited to the Conyers Plant.  On August 27, 2020, in Westlake, Louisiana, rainwater from Hurricane Laura

---

[6] https://www.11alive.com/article/news/local/conyers/chemical-fire-breaks-out-conyers-warehouse/85-231326577.
[7] https://cts.gaepd.org/Complaint/79996
[8] https://www.csb.gov/bio-lab-conyers-chemical-release-/

mixed with TCCA stored at the Lake Charles BioLab  facility and caused yet another decomposition reaction and explosion.

25.    The community of Rockdale County, Georgia has approximately 93,000 residents. The community of Conyers, Georgia has approximately 17,000 residents.

26.    Numerous residential, commercial, and public properties are located in close proximity to the Conyers Plant.  These properties include:

     a. Homes, schools, commercial buildings and stores, churches, and athletic fields;

     b. Shoal Creek Elementary School, located 1.6 miles from the Conyers Plant;

     c. Conyers Middle School, located 2.2 miles from the Conyers Plant;

     d. Rockdale County High School, located 1.9 miles from the Conyers Plant;

     e. CJ Hicks Elementary School, located 2.1 miles from the Conyers Plant;

     f. Georgia College of Construction, located 1.6 miles from the Conyers Plant;

     g. Rockdale County 911 Emergency Center, located 1.3 miles from the Conyers Plant;

     h. Conyers Rockdale Library System, located 1.6 miles from the Conyers Plant;

    i.  Conyers First Methodist Church, located 1.4 miles from the Conyers Plant;

    j.  Victorious Life Church, located 1.8 miles from the Conyers Plant;

    k.  Antioch East AME Church, Inc., located 1.8 miles from the Conyers Plant;

    l.  Kingdom Hall of Jehovah's Witnesses, located 1.7 miles from the Conyers Plant;

    m. Rockdale County Parks & Rec, located 1.8 miles from the Conyers Plant;

    n.  AMMY Nursery, located 2.3 miles from the Conyers Plant;

    o.  Conyers Apostolic Church, located 1.8 miles from the Conyers Plant;

    p.  Way of the Cross Baptist Church, located 2.1 miles from the Conyers Plant.

27.    Upon information and belief, BioLab stored chlorine and other chemicals at the Conyers Plant.

28.    At all relevant times, the risk of a chemical fire and the release of a toxic smoke and dust plume was reasonably foreseeable to Defendants.

29.    At all relevant times, it was reasonably foreseeable to Defendants that the risk of a chemical fire and the release of a toxic smoke and dust plume could

impact the properties and present a hazard to the Rockdale residents located near the Conyers Plant.

**E.      The Fire and the Ensuing Toxic Plume**

30.      On September 29, 2024, in the early morning hours, a fire ignited at the Conyers Plant, resulting in a chemical reaction that caused an enormous toxic smoke and dust plume—the plume was so large that it could be "seen for miles."[9] The plume was visible from at least 30 miles away.[10]

31.      Figures 2, 3, 4, and 5, below, depict the smoke and dust plume.

---

[9] https://www.cnn.com/2024/09/29/us/rockdale-county-Bio-Lab-fire-georgia/index.html.

[10] https://www.firehouse.com/operations-training/video/55143420/evacuations-ordered-after-chemical-plant-fire-in-conyers-ga.



Figure 2



Figure 3



Figure 4



Figure 5

32.     Rockdale's Fire Chief reported that the reaction was caused by BioLab's malfunctioning sprinkler system, which leaked onto the facility's water-reactive chemicals, including TCCA.[11]

33.     The fire was initially contained but reignited around 12 p.m., sending a large plume of black smoke into the air. The fire was not contained again until approximately 4 p.m.

34.     The fire caused a "complete collapse" of the Conyers Plant building, as the roof caved in and multiple walls fell as a result of the fire.[12]

35.     Because the internal chemical storage structure collapsed, the toxic chemicals kept at the Conyers Plant are no longer removable by pallet; rather, they are mixed among rubble and continue to off-gas toxic chemicals.

36.     Bio-Lab did not have an adequate fire protection system in order to quickly and effectively extinguish fires at their facility without causing dangerous chemical reactions with water-reactive chemicals.

---

[11] Shelter-in-place order for 90,000 Georgia residents lifted after chemical fire – AP News
[12] https://www.cnn.com/2024/09/29/us/rockdale-county-Bio-Lab-fire-georgia/index.html.

37.     BioLab's failure to possess and utilize an effective fire protection system exacerbated the harm caused by the fire at the Conyers Plant and delayed emergency response to the fire.

38.     At approximately 1:10 p.m., authorities in Rockdale County, Georgia issued an Evacuation Alert asking residents living between Sigman Road and Interstate 20 near the Conyers Plant to evacuate immediately and announcing that Interstate 20 would be closing ("Evacuation Alert").

39.     The Evacuation Alert displaced more than 17,000 residents.

40.     At the same time, Rockdale County authorities announced the closing of Interstate 20 in both directions between Salem Rd and Turner Hill, an eight-mile stretch of the highway, causing significant traffic disruptions. All southbound traffic on Hi-Roc Road between Irwin Bridge and Highway 138 was shut down, and all traffic from Highway 138 to Interstate 20 from Turner Hill Road to Salem Road was shut down.

41.     Interstate 20 remained closed on September 30, 2024, causing additional traffic disruptions.

42.     Evacuated residents were unable to return to their homes to obtain personal items and necessities, including medication, technology, and communication devices to inform loved ones of their wellbeing.

43.    At approximately 7:45 p.m., Rockdale County, Georgia authorities issued a shelter-in-place order for all residents of Rockdale County ("Shelter-in-Place Order") between 7:45 p.m. and midnight.[13] More than 77,000 residents were affected and could not leave their homes.

44.    Those sheltering in place were asked by County officials "to turn the air conditioning off and keep windows and doors shut."[14]

45.    The Shelter-in-Place order was extended and continued on September 30, 2024.[15]

46.    All businesses in Rockdale County were asked to close operations while the Shelter-in-Place Order was in effect.

47.    Piedmont Rockdale Hospital evacuated patients and announced that the hospital was on diversion, delaying care for those in need of emergency medical treatment.[16]

---

[13] https://www.rockdalecountyga.gov/updates-on-bio-fire-9-29-24/.

[14] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with-shelter-in-place-continuing/.

[15] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with-shelter-in-place-continuing/.

[16] https://www.11alive.com/article/news/local/conyers-chemical-plume-Bio-Lab-fire-latest-updates-monday-september-30/85-2a4ac3d6-4263-4b25-aec8-5d0865c7c960.

48.     Newton County Schools closed all schools on September 30, 2024, due to the fire and toxic smoke and dust plume from the Conyers Plant.[17]

49.     Georgia Piedmont Technical College closed both their Newton and Rockdale campuses until further notice because of the fire and toxic smoke and dust plume.

50.     Government buildings, including the Rockdale County Courthouse, Administration Building, Water Resources, Elections Office, Animal Services, Tax Commissioner, and Board of Commissioner's Office were all closed on September 30, 2024, due to the fire and toxic smoke and dust plume.[18]

51.     The City of Conyers closed City Hall, municipal court, and Conyers University through October 2, 2024, and cancelled a Conyers Downtown Development Authority meeting scheduled for October 1, 2024.[19]

---

[17] https://www.newtoncountyschools.org/departments/public_relations/news/schools _closed_monday__september_30?fbclid=IwY2xjawFm09ZleHRuA2FlbQIxMAA BHQ- KlsTtwU5LXzxpISGupG0F0A2fijFc32ZrSQSNx2GxNd1uQSyYwVLQug_aem_7 E6-2smPIyp0ljqw_kYpxg.

[18] https://www.wsbtv.com/news/local/rockdale-county/rockdale-county-chemical- fire-county-school-closings-monday/CP52YJPW7FAGTNPVK6MF5P53VM/.

[19] https://www.11alive.com/article/news/local/conyers-chemical-plume-Bio-Lab- fire-latest-updates-monday-september-30/85-2a4ac3d6-4263-4b25-aec8- 5d0865c7c960.

52.     Government offices in nearby Newton County closed on September 30, 2024, as well due to health concerns.

53.     Churches in Rockdale County, and from Rockbridge to Northside County, were all asked to cancel or immediately end services on Sunday, September 29, 2024.[20]

54.     The Rockdale County Fire Rescue, the local fire department, was dispatched to respond to the fire at the Conyers Plant.

55.      The Rockdale County Emergency Management Agency mobilized in response to the fire. The state also sent officials from the Georgia Environmental Protection Division ("EPD") to respond and assess the air quality after the fire.

56.     The Georgia Department of Transportation managed road closures and accompanying transportation delays in response to the fire.

57.     The federal Environmental Protection Agency ("EPA") also responded, assisting in air quality monitoring and assessment,[21] and the Federal Emergency

---

[20] https://www.ajc.com/news/atlanta-news/metro-atlanta-chemical-plant-fire-leads-to-evacuation-of-17000/NLTZ6RLMIZCERF76B7FHUQFRYE/.

[21] https://www.wjbf.com/news/georgia-news/residents-in-conyers-ga-told-to-shelter-in-place-following-chemical-plant-fire/.

Management Agency was called to respond and assist in emergency management as well.[22]

58.    Shelter locations and evacuation sites were established for affected residents, including sites in Lithonia, Covington, and Stockbridge, with assistance from the American Red Cross and DeKalb County Emergency Management.

59.    The repeated incidents at the BioLab facility highlight ongoing safety concerns and the need for improved safety measures to protect the community.

60.    Beginning on September 29, 2024, and continuing through the date of this Complaint, Rockdale residents have been unable to use and enjoy their indoor and outdoor property as a result of the debris and poor air quality caused by the fire.

61.    The EPD and the EPA conducted air quality surveys on September 29 and 30, 2024, and the results indicated "the harmful irritant chlorine" emitting from the Conyers Plant.[23] The chlorine was present in the plume of smoke coming from the facility, and wind patterns made the toxic chlorine pollution follow an "unpredictable path."

---

[22] https://www.cnn.com/2024/09/29/us/rockdale-county-Bio-Lab-fire-georgia/index.html.

[23] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with-shelter-in-place-continuing/.

62.     Residents living near the Conyers Plant have observed smoke and ash debris on their property and around their homes.[24]

63.     The toxic smoke and dust plume caused concern in counties adjacent to Rockdale County. Newton County closed schools and government buildings. Walton County dispatched the Walton County Emergency Management Agency and the Walton County Fire Rescue to aide in the response to the fire and toxic smoke and dust plume. Walton County also advised residents to "turn off your air conditioners, turn on your ceiling fans, and if possible bring your outside animals indoors."[25]

64.     The 2024 explosion and fire at the Conyers Plant is the culmination of Defendants' years long practice of negligence and disregard for safety.

65.     The community that BioLab operates its Conyers Plant in is concerned and has been for years.

---

[24] https://news.monroelocal.org/update-walton-ema-director-chlorine-smell-in-air-is-sufficiently-dissipated-but-stay-indoors/.

[25] https://news.monroelocal.org/update-walton-ema-director-chlorine-smell-in-air-is-sufficiently-dissipated-but-stay-indoors/.

66.    Former firefighter and Atlanta resident Daniel Frye expressed his concerns stating, "this is a grave situation," and that "the plant should be closed" because of its proximity to "adjacent population centers."[26]

67.    Other residents have noted the Conyers Plant is a danger that has been "hiding in plain sight for years."[27]

68.    Plaintiff and tens of thousands of his fellow community members have been ignored for years.

69.    At the time of the fire, Plaintiff was at work and his wife and son were at their residence, which is approximately 3.2 miles from the Conyers Plant. Plaintiff was immediately concerned for himself and his family as he witnessed plumes of orange and black smoke billowing in the air near his home.

70.    As a result of the fire and resulting toxic smoke and dust plume, Plaintiff had and continues to have concerns about his health and well-being and the health and well-being of his family because their residence is in the area directly impacted by the plume.

---

[26] https://www.firerescue1.com/hazards-hazmat/records-ga-chemical-plant-had-a-history-of-fires-and-leaks

[27] 'Pattern of negligence': a chemical plant fire in Georgia forces tens of thousands to take shelter – Georgia – The Guardian

71.    Plaintiff was not able to evacuate the area.  He and his family resorted to sheltering in their home where they were forced to turn off the heating, ventilation, and air conditioning system.  Neither Plaintiff nor his wife were able to attend work, and they have not been able to leave safely leave their home.

72.    As a result of the fire and resulting toxic smoke and dust plume, toxic and harmful substances, smoke, debris, particulate matter, other dust, and other pollutants have been deposited in, on, and around Plaintiff's property. As a result, Plaintiff has not been able to use and enjoy his home.

73.    At all relevant times, Defendants failed to act with reasonable care, acted with utter indifference, recklessly, and with willful and wanton misconduct.

74.    Defendants failed to prevent the chemical fire and the resulting toxic smoke and dust plume and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

75.    Defendants, alternatively, failed to discover the hazards that resulted in the chemical fire and resulting toxic smoke and dust plume, where such hazards could have been discovered by the exercise of ordinary care and otherwise acted with utter indifference,  recklessly, and with willful and wanton misconduct.

76.    Defendants failed to act with reasonable care to take sufficient precautions which would have prevented or mitigated the chemical fire and toxic

smoke and dust plume and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

77.    Defendants failed to act with reasonable or ordinary care to prevent toxic chemicals, dust, and hazardous by-products from being released into the environment and onto the properties of Plaintiff and the other Class members and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

78.    Defendants failed to act with reasonable or ordinary care to contain the discharge of toxic smoke, dust, and hazardous by-products after the fire occurred and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

79.    At all relevant times, it was foreseeable to Defendants that their failures, acts and omissions would seriously injure Plaintiff and the other Class members.

## II.    CLASS ACTION ALLEGATIONS

80.    Plaintiff seeks relief on behalf of himself and as representative of all others who are similarly situated. Pursuant to Rule 23(a), (b)(2), (b)(3), and (c) of the Federal Rules of Civil Procedure, Plaintiff seek to certify and represent a class defined as:

> All individuals who resided, owned or leased property, or worked within a 30-mile radius of the Conyers Plant on September 20, 2024 (the "Class Zone"), and were subject to the evacuation orders, shelter-in-place orders, and/or shelter-in-place advisories issued as a result of the plume of toxic smoke, debris, and particulate matter that emanated from the Conyers Plant because of the fire and chemical reaction that started on September 29, 2024.

81.    Specifically excluded from the Class are Defendants, including any parent, subsidiary, affiliate, or controlled person of Defendants; Defendants' officers, directors, agents, or employees; insurers and insurance syndicates whose claims for damages regarding the September 29, 2024, fire and resulting toxic chemical plume, arise out of a right of subrogation, whether equitable, contractual, or otherwise; the judicial officers assigned to this litigation and any members of their staffs and immediate families, and any juror assigned to this action.

82.    Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

83. **Numerosity.** Upon information and belief, there are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, tens of thousands of people live in Rockdale County alone, thousands of properties were subject to the Evacuation Alert, and thousands of pieces of real and personal property were affected. Class members may be identified through objective means, including objective data available to the Parties regarding the persons and property present in the affected areas following the fire. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media and/or published notice. Thus, pursuant to Rule 23(a)(1) of the Federal Rules of Civil Procedure, the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

84. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact predominate in this matter because Defendants' conduct towards Plaintiff and the other Class members is uniform. These common questions of law or fact predominate over any questions affecting only individual Class members. Common questions include, but are not limited to the following:

a.  Whether Defendants engaged in the wrongful conduct alleged herein;

b.  Whether Defendants' acts or omissions, as set forth herein, caused or contributed to the subject fire at the Conyers Plant, the subsequent release of toxic chemicals, and the resulting contamination and evacuation and "shelter in place" orders;

c.  Whether Defendants caused the fire at the Conyers Plant in violation of rules, regulations, and customs;

d.  Whether Defendants caused the release of toxic chemicals and particulate matter into the Rockdale community and surrounding communities;

e.  Whether Defendants failed to exercise reasonable care in allowing the fire at the Conyers Plant to occur;

f.  Whether Defendants failed to exercise reasonable care in causing the chemical reaction that caused the release of toxic chemicals and particulate matter into the Rockdale community and surrounding communities;

g.  Whether Defendants omitted required, reasonable, or minimal safety measures resulting in the fire at the Conyers Plant;

h.  Whether Defendants failed to follow required, reasonable, or minimal safety measures that would have mitigated the fire at the Conyers Plant;

i.  Whether Defendants engaged in ultrahazardous activities;

j.  Whether Defendants were negligent;

k.  Whether Defendants created a nuisance;

l.  Whether Defendants engaged in trespass to the properties of the Class members;

m. Whether Plaintiff and the other Class members suffered injury and damages as a result of Defendants' conduct;

n. Whether Plaintiff and the other Class members are entitled to damages, equitable relief, and other relief.

85.   Plaintiff shares a common interest with the other Class members in the objectives of the action and the relief sought.

86.   Plaintiff satisfies the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure because his claims arise from Defendants' course of conduct, which led to the single incident affecting all of the Class members and are based on the same legal theories as all other Class members' claims.

87.   **Adequacy.** Pursuant to Rule 23 (a)(3) and (4) of the Federal Rules of Civil Procedure, Plaintiff can and will adequately represent the other Class members and their interests are common to and coincident with them.   By proving his individual claim, Plaintiff will necessarily prove the other Class members' claims and prove Defendants' class wide liability. Plaintiff has no known conflicts of interest with any of the other Class members, his interests and claims are not antagonistic to those of any other Class member, nor are his claims subject to any unique defenses.

88.    Moreover, Plaintiff's claims are typical of the claims of all other Class members because all such claims arise from Defendants' conduct as alleged herein.

89.    **Superiority and Predominance**. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy.  The common questions of law and of fact regarding Defendants' conduct predominate over any questions affecting individuals.

90.    Because the damages suffered by certain individuals in the Class may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual members of the Class to redress the wrongs done to each of them individually, such that many members of the Class would have no rational economic interest in individually controlling the prosecution of specific actions.  Moreover, the burden imposed on the judicial system by individual litigation would be enormous.

91.    Resolution of the common issues of fact and law affecting Plaintiff's and the other Class members' claims, including, but not limited to the common issues discussed above, in a single action will eliminate the chance of inconsistent and/or varying adjudications. Such resolution will further allow Class members to present their claims efficiently; share the costs of litigation, experts, and discovery;

and preserve judicial time and resources. A class action is thus superior to other available means for the fair and efficient adjudication of Plaintiff's and the other Class members' claims.

92.   Plaintiff and the other Class members' legal claims arise from the same single event, namely, the Conyers Plant catching fire, followed by the creation of a large plume of toxic smoke and dust that emitted from the facility and spread throughout the Rockdale County area and beyond. The material facts underlying each Class member's claim are the same material facts as those supporting Plaintiff's claims alleged herein and require proof of the same material facts.

93.   Plaintiff, therefore, can and will fairly and adequately protect and represent the other Class members' interests.

94.   If appointed Class representative, Plaintiff is aware of, and is committed to, faithfully upholding his fiduciary duties to absent Class members.

95.   Plaintiff and his counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the Class is fairly represented.

96.   Plaintiff and his counsel will, therefore, fairly and adequately assert and protect the Class's interests.

97. **Appropriateness**. Class treatment provides an appropriate method for adjudication of this controversy insofar as the class action can best secure the economics of time, effort, and expense and promote uniformity of decision. Indeed, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class. As a result, separate actions brought by individual Class members would possibly lead to a situation where identical language is interpreted differently.

98. In the alternative, the proposed classes may be certified because:

a. The prosecution of separate actions by each individual Class member would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the Defendants;

b. The prosecution of individual actions could result in adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of non-party Class members or substantially impair or impede their ability to protect their interests; and

c. Defendants acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

III.   CLAIMS ALLEGED

**COUNT I**
**Negligence**
**(Against All Defendants)**

99.   Plaintiff adopts and incorporate Paragraphs 1-98, as though fully set forth herein.

100.   Defendants knew or should have known of the risk of fire, chemical reaction, and toxic plume at the Conyers Plant.

101.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic substances into the surrounding neighborhood and communities.

102.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities.

103.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful debris into the surrounding neighborhood and communities.

104.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful particulate matter into the surrounding neighborhood and communities.

105.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful dust into the surrounding neighborhood and communities.

106.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful pollutants into the surrounding neighborhood and communities.

107.   Defendants knew or should have known that the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants would pose a risk of serious damage to, diminution in the value of, and loss of use and enjoyment of the affected property.

108.   Defendants had a duty to Plaintiff and the other Class members to exercise reasonable care to prevent the foreseeable interference with Class members' use and enjoyment of their properties that has resulted from the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from the fire and toxic smoke and dust plume.

109.   Defendants had a duty to prevent the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from the Conyers Plant.

110.   Defendants breached the duties that they owe to Plaintiff and each of the other Class members, to exercise reasonable care, which has interfered with Class members' property and caused property damage, lost profits, loss of use, and expected diminution of property value.

111.   Specifically, Defendants breached their duties by:

   a.  Failing to take sufficient precautions to prevent a fire on September 29, 2024;

   b.  Failing to properly maintain and/or repair the Conyers Plant to prevent severe weather and other events from causing dangerous chemical reactions;

   c.  Failing to take sufficient precautions to prevent a chemical reaction with water-reactive chemicals;

   d.  Failing to take sufficient precautions to extinguish a fire;

   e.  Failing to take sufficient precautions to prevent and mitigate the emissions of toxic chemicals from the Conyers Plant;

   f.  Failing to follow the guidance presented in the Center for Chemical Process Safety Monograph Assessment of Planning for Natural Hazards;

   g.  Failing to properly and safely store chemicals at the Conyers Plant;

   h.  Failing to create and/or enforce policies that would prevent fires from occurring at the Conyers Plant;

   i.  Failing to properly supervise and train personnel to prevent fires at the Conyers Plant;

j.  Failing to prevent and/or mitigate exposure to Plaintiff and the proposed Class to continuous off-gassing of toxic chemicals even after the fire was extinguished;

k.  Allowing enormous amounts of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants to be deposited on Class members' properties; and/or

l.  Otherwise failing to take sufficient precautions to control the emissions of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from Class members' property.

112.  As a direct and proximate cause of one or more of the aforementioned negligent acts or omissions, Plaintiff and the other Class members suffered property damage, lost profits, loss of use, and expected diminution of property value.

113.  As a direct and proximate cause of one or more of the aforementioned negligent acts or omissions, Plaintiff and the other Class members have incurred, and will continue to incur, monetary damages arising from the property damage, lost profits, loss of use, and diminution of property value.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in his favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate him, plus the costs of this lawsuit, and an injunction requiring

Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## **COUNT II**
### **Nuisance**
### **(Against All Defendants)**

114.    Plaintiff adopts and incorporate Paragraphs 1-98, as though fully set forth herein.

115.    Defendants knew or should have known of the risk of fire at the Conyers Plant.

116.    Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic substances into the surrounding neighborhood and communities.

117.    Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities.

118.    Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful debris into the surrounding neighborhood and communities.

119.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful particulate matter into the surrounding neighborhood and communities.

120.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful dust into the surrounding neighborhood and communities.

121.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful pollutants into the surrounding neighborhood and communities.

122.   The fire at the Conyers Plant caused the uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants, which invaded the Plaintiff and the other Class members' properties, and Plaintiff and the other Class members did not consent to the entry of such materials onto their properties.

123.   Defendants knew or should have known that they caused the disposal and invasion of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants on the Plaintiff's and the other Class members' properties but have failed to remove such material from the Plaintiff's and the other Class members' properties.

124.    Defendants' uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants and the disposal and invasion thereof onto the Plaintiff's and the other Class members' properties is unreasonable and unlawful.

125.    The discharge, disposal, and invasion of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants onto Plaintiff's and the other Class members' properties have substantially interfered with the lawful rights of Plaintiff and the other Class members to use and enjoy their properties, which constitutes a private nuisance.

126.    The nuisance described above continues to this day and has adversely impacted the life and health of Plaintiff and the other Class members.

127.    The nuisance described above has unreasonably, negligently, and recklessly interfered with the comfortable use and enjoyment of life and property, has caused expected diminutions in Plaintiff's and the Class members' property values, and has thereby created a common law nuisance, for reasons of which Defendants are liable to the Plaintiff and the other members of the Class Plaintiff represents.

128.    As a direct and proximate result of this nuisance, Plaintiff and the other Class members suffered unacceptable and unreasonable interference with their rights

to use and enjoy their properties, interference they should not be required to suffer without compensation.

129.   As a direct and proximate cause of the nuisance, Plaintiff and the other Class members have incurred, and will continue to incur, monetary damages arising from the lost use and enjoyment of their property caused by Defendants' conduct.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in his favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## COUNT III
**Trespass**
**(Against All Defendants)**

130.   Plaintiff adopts and incorporate Paragraphs 1-98, as though fully set forth herein.

131.   Defendants knew or should have known of the risk of fire at the Conyers Plant.

132.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic substances into the surrounding neighborhood and communities.

133.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities.

134.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful debris into the surrounding neighborhood and communities.

135.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful particulate matter into the surrounding neighborhood and communities.

136.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful dust into the surrounding neighborhood and communities.

137.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful pollutants into the surrounding neighborhood and communities.

138.   Defendants knew or should have known that the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants into the surrounding neighborhood would pose a risk of serious damage to, diminution in the value of, and loss of use and enjoyment of the affected property.

139.   The fire at the Conyers Plant caused the uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants, which invaded the property in which Plaintiff and the other Class members have an interest, and Plaintiff and the other Class members did not consent to the entry of such materials onto these properties.

140.   Defendants are aware that they caused the disposal and invasion of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants on the Plaintiff's and the Class members' properties but have failed to remove the toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from the properties.

141.   Defendants' uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants and the disposal and invasion thereof onto the Plaintiff's and the other Class members' properties is unreasonable and unlawful, and such discharge, disposal and invasion have

substantially interfered with the lawful rights of Plaintiff and the other Class members to use and enjoy their properties, constituting an unlawful trespass.

142. The trespass is continuing and ongoing.

143. Defendants' interference with Plaintiff's and Class members' possessory rights was unreasonable and foreseeable.

144. As a direct and proximate result of the trespass, Plaintiff and Class members sustained and will continue to sustain a loss of ability to use and enjoy their properties.

145. As a direct and proximate cause of the trespass, Plaintiff has incurred, and will continue to incur, monetary damages arising from the lost use and enjoyment of his property caused by Defendants' conduct.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## COUNT IV
**Punitive Damages
(Against All Defendants)**

146.   Plaintiff adopt and incorporate Paragraphs 1-98, as though fully set forth herein.

147.   Defendants' repeated incidents involving similar fires, smoke plumes, chemical releases, and toxic smoke and dust emissions from the Conyers Plant reflect bad faith, reckless, and willful and wanton conduct on the part of Defendants.

148.   Defendants' failures to address the causes of previous incidents and allowing another chemical fire to occur without adequately updating fire protection systems and emergency procedures represent bad faith, reckless, and willful and wanton conduct on the part of Defendants.

149.   Defendants' misconduct has been willful, malicious and in reckless and wanton disregard for the rights of Plaintiff and of others. As such, Defendants should be required to pay punitive damages in an amount that will deter such misconduct in the future.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in his favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring

Defendants to remediate the resulting harm at or threatening their residences and for
other appropriate injunctive relief.

## IV.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class
members, respectfully request that this Court:

a) Issue an order certifying this action as a class action pursuant to Rule
23 of the Federal Rules of Civil Procedure in the manner described
above;

b) Appoint Plaintiff as Class representative and his undersigned counsel
as Class counsel;

c) Issue a class-wide judgment holding Defendants liable for the reasons
described above for their unlawful conduct causing Plaintiff and the
other Class members to sustain damages resulting therefrom;

d) Enter a judgment declaring that Defendants have committed the
violations of law alleged herein;

e) Award Plaintiff and the other Class members compensatory damages
in an amount that is fair, just, and reasonable, to be determined at trial;

f) Award Plaintiff and the other Class members punitive damages in an
amount that is fair, just, and reasonable, to be determined at trial;

g) Award pre-judgment and post-judgment interest to Plaintiff and the
other Class members as permitted by law;

h) Award reasonable attorneys' fees and costs of suit; and

i) Order equitable, injunctive, and declaratory relief requiring Defendants
to:

    i.    Provide all Conyers residents with particulate masks;

    ii.    Provide all Conyers residents with high-efficiency particulate air filters for their homes;

    iii.    Conduct immediate testing and sampling of the air and groundwater to detect the presence of toxins and other chemicals potentially hazardous to human health;

    iv.    Immediately and publicly disclose all information regarding the toxins and other compounds that comprised the plume;

    v.    Institute perimeter particulate matter monitoring at the fence line of the Conyers Plant;

    vi.    Install additional air quality monitors in all affected areas;

    vii.    Provide a full cleanup of all affected residences, businesses, and common areas;

    viii.    Wash the exterior of buildings in all affected areas;

    ix.    Wash the streets and sidewalks in all affected areas;

    x.    Provide alternative housing for residents in Conyers, Georgia and affected surrounding communities for the duration of the cleanup process;

    xi.    Provide funds for an independent third-party assessor to evaluate and provide estimates to real property owners in Conyers, Georgia and affected surrounding communities regarding property damage and diminution in property value; and

    xii.    Any and all additional relief that the Court deems just and proper.

## V.    JURY DEMAND

Plaintiff, individually and on behalf of the other proposed Class members, demand a trial by jury on all issues herein so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**Dated:**  October 18, 2024

Respectfully submitted,

/s/ Michael J. Blakely, Jr.

Michael J. Blakely, Jr
Ga. Bar No. 708906
**THE BLAKELY FIRM, LLC**
309 Sycamore Street
Decatur, Georgia 30030

***Counsel for Plaintiff and the Proposed Class***